MARY F. CONSTANT *et al.*, as Executors, etc., Respondents, *v.* THE UNIVERSITY OF ROCHESTER, Impleaded, etc., Appellant.

*Court of Appeals, May 24, 1892.*

1. *Mortgage.  Recording.*—Under the provisions of the statute, making a prior unrecorded mortgage void as against a subsequent mortgagee in good faith and for a valuable consideration, whose mortgage is first duly recorded, the fact that the subsequent mortgagee, after the execution and delivery of his mortgage, and after he had parted with the consideration therefor, but before it was recorded, had notice of the prior mortgage, does not affect the priority of his lien.

2. *Principal and agent.  Knowledge.*—Where an agent recollected, at the time he received for his principal a mortgage, that there had been a prior mortgage upon the property, but honestly believed at the time that it was or had been satisfied, although mistaken upon that point, the subsequent mortgagee is not chargeable with knowledge of the existence of such prior mortgage.

3. *Fraud.  Presumption.*—Where the natural inference from the proofs does not necessarily lead to the presumption of a fraudulent intent, but the evidence relied upon is equally as consistent with innocence as w' wrong-doing, that construction must be placed upon it which will onerate the party implicated from a dishonest intent.

Appeal from judgment of the New York superior court, general term, affirming judgment in favor of plaintiffs.

*Martin W. Cooke,* for appellant.

*John E. Parsons,* for respondents.

MAYNARD, J.—The prior unrecorded mortgage of plaintiffs' testator is declared by statute to be void as against the defendant, whose subsequent mortgage was first duly recorded, provided it was a purchaser in good faith and for a valuable consideration.  4 R. S., 8th ed., 2469, § 1.  Upon a former appeal in this case it was held that the defendant was a mortgagee for a valuable consideration.  Constant *v.* University, 111 N. Y. 607.  The evidence upon that subject in the present record is not materially changed, and the

decision there made must control the disposition of that question upon this review. But the good faith of defendant's purchase is sharply assailed, and upon that issue the plaintiffs have succeeded in the courts below. When the case was here before, that question also received elaborate consideration, and the opinion of the court embodies an exhaustive examination of the facts and of the law applicable to them. For the purposes of this decision, it is only necessary to re-state the legal propositions then enunciated. It is sought to destroy the defendant's character, as a purchaser in good faith, by showing that one Deane, who acted as its agent in procuring the execution of its mortgage, was, likewise the agent of Constant, the plaintiffs' testator, and as such agent had also procured the execution of the plaintiffs' mortgage some eleven months previously, and had retained it in his possession, and must have known of its existence when the defendant's mortgage was executed. It is insisted that this knowledge, thus acquired while acting as the agent for another principal, is imputable to the defendant, and deprives it of the benefit to which it would otherwise be entitled under the recording act.

Upon this point this court upon the former appeal, after reviewing the uncontradicted facts, say (p. 613) : " All these facts would tend to show very strongly that Deane had no recollection whatever of the existence of the Constant mortgage as an existing lien at the time he took the mortgage to the university. But the burden is upon the plaintiffs to prove clearly, and beyond question, that he did, and it is not upon the defendant to show that he did not have such recollection. And we think there is a total lack of evidence in the case which would sustain the finding that Deane had the least recollection on the subject at the time of the execution of the University mortgage. Under such circumstances we think it impossible to impute notice to the University, or knowledge in regard to a fact which is not proved to have been possessed by its agent. If such knowledge did

not exist in Deane at the time of his taking the mortgage to the University, then the latter is a *bona fide* mortgagee for value, and its mortgage should be regarded as a prior lien to that of the unrecorded mortgage of Constant, which is prior in point of date. The plaintiffs are bound to show by clear and satisfactory evidence that when this mortgage to the University was taken by Deane, he then had knowledge, and the fact was then present to his mind, not only that he had taken a mortgage to Constant eleven months prior thereto on the same premises, which had not been recorded, but that such mortgage was an existing and valid lien upon the premises which had not been in any manner satisfied."

We have, therefore, only to consider whether this failure of proof upon the first trial has been wholly overcome by the evidence given upon the last trial. A careful comparison of both records discloses the fact that the only additional testimony of any importance was given by the witness Squires, who was a member of the law firm of Deane & Chamberlain, and who is one of the attorneys for the plaintiffs in the prosecution of this suit. The transaction which he narrates, and upon which the plaintiffs especially rely, took place after the defendant's mortgage had been executed and returned to the firm, and had reference to the transmission of the mortgages to the register's office for record.

He testified that after the execution of plaintiffs' mortgage it had been kept in the box of unrecorded mortgages by the direction of Deane, and that frequently, when there was a lull in the business of the office, and as often as three or four times a month, the contents of this box would be gone over, and as the mortgages were taken up, one by one, Deane would indicate whether they should be recorded or not, and that the plaintiffs' mortgage was always included in the package so examined and among those left unrecorded ; and that upon January 11, 1884, after the defendant's mortgage had been executed and returned to his possession, he again called Deane's attention to the plaintiffs' mortgage, and asked

him whether it should be recorded or not. Deane replied in the negative, and directed the defendant's mortgage to be recorded, which was done on the same day. At the same time he prepared, under the direction of Deane, for the use and information of the mortgagor, a statement showing what disposition had been made of the sum of $9,000, the loan of which was the consideration of the defendant's mortgage. This statement shows that $6,325 was used for the satisfaction of the plaintiffs' mortgage and interest; $198.50 for fees and commissions, including $3 for drawing a satisfaction piece of plaintiffs' mortgage and $1 for filing, and that the balance of $2,476.50 was credited to the mortgagor upon an account which she had with Deane.

There can be no question that this occurred after the defendant's mortgage had been executed and its rights as a mortgagee had become fixed. Squires so testifies upon his direct examination, and in response to an inquiry by the trial court, he says that the direction not to record the plaintiffs' mortgage was given upon the same day on which the University mortgage was recorded and in connection with the question of sending the University mortgage to record. But it is not sufficient to postpone the lien of defendant's mortgage that it received notice of the existence of plaintiffs' unrecorded mortgage before its mortgage had been placed upon record. It could not be affected by such notice unless it came to its knowledge or that of its agent before its mortgage was executed, or it had parted with the consideration of it. Story's Eq., § 400*b*, 10th ed.; Jones on Mortgages, § 581.

It may, however, be assumed that Deane, at the time of the execution of the defendant's mortgage, did recall the fact of the execution of the plaintiff's mortgage, and had present knowledge of the existence of that instrument, yet, we think, there is no sufficient proof to be found in the record to sustain a finding that he knew, or believed, that such mortgage was an existing and valid lien upon the premises,

which had not been in any manner satisfied. On the contrary, the evidence of Squires, when read in connection with the other proofs, not only fails to support any such finding but, when properly construed, leads to the conclusion that when Deane took the University mortgage from the Mehens, he regarded the plaintiffs' mortgage as satisfied, and had sufficient grounds for so regarding it. With respect to the situation at that time, there is no conflict in the testimony. Deane, as the agent of Mrs. Mehen, had negotiated a loan of $36,000 upon four lots on One hundred and seventh street, in which she had the equity of redemption. To effect this loan all prior incumbrances had to be extinguished, and among them two mortgages for $9,000 each held by the University. Deane had procured from the University satisfaction pieces of these mortgages, and on January 10th the transaction had been closed and $27,782 had been received by Mrs. Mehen in a check payable to her order, which was endorsed by her to Deane and deposited by him to his credit in a bank account kept in his name as trustee. On the same day he wrote to the defendant enclosing a check for the interest and informing it that the mortgages had been paid off, and that the principal sum would be re-invested in two mortgages dated January 11th, upon two other lots belonging to Mrs. Mehen on Lexington Ave. The next day these mortgages were executed ; the bonds and insurance policies sent to the defendant and the mortgage to the register's office for record. One of these mortgages was upon the same premises as plaintiffs' mortgage. The transaction was nothing less than a loan of $9,000 of the defendant's money to Mrs. Mehen by Deane, as agent of the University. In what way did Mrs. Mehen receive the benefit of this loan? First, by a payment to Deane as the agent of Constant, of the sum of $6,325 in satisfaction of the plaintiffs' mortgage, and, secondly, by a credit in her account with Deane for the balance after deducting the fees and commissions of the attorneys.

It cannot be doubted that this was a good payment in law

of the Constant mortgage.   Deane, as his agent, had authority to receive it.   It is shown that he had received payment of many similar securities for Constant, and had invested and reinvested moneys for him to the amount of over one million dollars.   Deane and Squires gave Mrs. Mehen a written statement showing that $6,325 of the consideration of the defendant's mortgage had been appropriated to the payment and satisfaction of the plaintiffs' mortgage and they required her, through her attorney in fact, to sign a receipt to the effect that she had received that amount on account of the loan made by the defendant upon its mortgage, through the satisfaction of the plaintiffs' mortgage, and to certify to the correctness of the statement.

The entire transaction may be thus concisely stated : of the $27,000 received by Deane from the One hundred and seventh street mortgage, $18,000 belonged to the University ; of this $9,000 were loaned to Mrs. Mehen on the Lexington Avenue lot in question.   Of this amount Mrs. Mehen paid to Deane as the agent of Constant the sum required to satisfy his mortgage.   The case shows, and the trial court has found, that on January 11th over $23,000 were in the hands of Deane and at the close of the day over $9,000 remained of the proceeds of the loan upon the One hundred and seventh street property ; so that he had at no time on that day less to his credit in the trustee account than the amount of defendant's mortgage.

It makes no difference whether Deane actually paid the money to Constant.   There was a long and complicated account between them, involving a large number of transactions and investments, and upon which there was a balance due Constant of over $200,000, including the amount of plaintiffs' mortgage.   Financial embarrassments and misfortunes, which inevitably follow the business methods which this record discloses, soon rendered Mr. Deane powerless to meet his liabilities, or else there would have been no occasion for this controversy.

It is evident that Deane regarded the mortgage as paid. He testifies, " that after the closing of the loan upon defendant's mortgage I understood that the money represented by plaintiffs' mortgage remained in my hands for investment." It was deposited in his account as trustee, where he tells us all the moneys belonging to Constant, which came into his hands for investment or reinvestment, were deposited. We have looked in vain through the record for some explanation of this trustee account. It does not appear whether it was an account kept by him as trustee of funds received from Constant alone, or from other parties, or whether it was a general account, in which all moneys received by him in a fiduciary capacity, from any source, were credited. A satisfaction piece of the mortgage was also prepared at the time by Deane's direction, and after his assignment the mortgage and the unexecuted satisfaction piece were found in the box in which the satisfied mortgages were kept. It is further apparent that Squires himself construed the transaction of January 11th as a payment of plaintiffs' mortgage. He testifies that, as one reason why he asked Deane whether the plaintiffs' mortgage should be recorded, he supposed it ought to be recorded and satisfied ; and that the statement for Mrs. Mehen, in which the mortgage was described as satisfied out of the proceeds of the University mortgage, was made primarily as a matter of book-keeping for Mr. Deane's accounts. The reasonable inference is, that upon Deane's books the plaintiffs' testator was, or was to be, credited with the amount of his mortgage, otherwise the statement would be of no value for the purposes of book-keeping.

On May 22d, after Deane's failure, the defendant's treasurer addressed a confidential letter to Squires, referring to its mortgage and requesting full information in regard to it, and to its present condition, and any other facts the defendant ought to know about the property and its mortgage. Squires replied on the 28th, stating that the mortgage was still in force, but that the house was in an unfinished condi-

tion, and giving other items of information; but saying nothing about the existence of a prior mortgage. If he then believed that there was such a mortgage outstanding, it would seem to have been the most important fact which he could have communicated to the defendant upon the subject of its inquiry. He again wrote on June 23d, stating many details in regard to the mortgage and the advisability of foreclosure; but made no reference to plaintiffs' mortgage.

There is also proof in the case that Constant understood the mortgage had been paid to Deane, and that he was liable to account for the proceeds. Deane testifies that in the spring of 1884 he told him what had been done with reference to this mortgage, and he expressed his satisfaction with it. Afterwards, Constant prepared a statement of his account against Deane, which included the amount of the mortgage, and was made subsequent to the assignment and with a view to a possible arrangement for the liquidation of all of his liabilities. He frequently asked Deane if he had reinvested the amount of the Mehen mortgage, and was told that he had not yet found a place for it.

Constant had other mortgages executed by the Mehens, upon which foreclosure suits were brought in the fall of 1884, and about the time defendant brought suit to foreclose its mortgage, but no attempt was then made to foreclose this mortgage and defendant had no intimation from Constant that he claimed it was a prior lien, until January, 1885, three days before the sale under the foreclosure of defendant's mortgage, when it received a letter from Constant's attorney in this action, stating that he held a mortgage upon this property which had never been paid and that he had been advised by his counsel that it was a prior lien to the University mortgage.

It is a fact of some importance that plaintiffs' mortgage was intended to be only a temporary lien upon the property. It was what was known as " a builder's mortgage," that is, a mortgage given upon an unimproved lot upon which the

mortgagor proposed to erect a building. No money was advanced at the time of its execution, but the amount of the consideration was to be advanced from time to time as the work progressed. It fell due in four months and it was the expectation of the parties that it would then, or shortly thereafter, be replaced by a permanent loan ; precisely what was done by the execution of the defendant's mortgage, if, as it contends, the plaintiffs' mortgage was then satisfied.

There are many other circumstances which are in harmony with the view that Deane regarded the Constant mortgage satisfied at the time he took the University mortgage, and which are irreconcilable with the claim that he then believed that the plaintiffs' mortgage was an outstanding and valid incumbrance upon the property described in it.

It is to be observed that this court held on the former appeal, that if Deane " recollected that there had been such a mortgage, but honestly believed it was, or had been satisfied, then, although mistaken upon that point, the University could not be charged with knowledge of the existence of such mortgage."

Whatever differences of opinion there may be as to the effect of the transactions of January 10th and 11th in operating to extinguish the lien of plaintiffs' mortgage, we think it is conclusively shown that Deane then regarded it as satisfied. There is at least an entire absence of that clear and satisfactory proof which this court has declared it is necessary for the plaintiffs to furnish in order to uphold a finding that he did not honestly entertain such a belief.

There is also a rule of evidence which should have some weight here. If Deane and Squires knew, or believed, that the plaintiffs' mortgage would be a valid lien upon this property after the execution of the defendant's mortgage, then they conspired to do a great wrong. They committed a palpable fraud upon Mrs. Mehen and upon, at least, one of the parties to this action. It has been repeatedly held by this court that where the natural inference from the proofs

made does not necessarily lead to the presumption of a fraudulent intent, but the evidence relied upon is equally as consistent with innocence as with wrong-doing, that construction must be placed upon it which will exonerate the party implicated from a dishonest intent. Morris *v.* Talcott, 96 N. Y., 100 ; Shultz *v.* Hoagland, 85 id., 464. This would be the rule upon the trial of an action in which the rights of Deane and Squires were directly involved. Much stronger reasons exist for its application where the rights of others depend upon the quality of their acts. They may have misapprehended the legal status of the plaintiffs' mortgage, but the evidence fails to show that they understood or believed that it was an existing lien upon the property when the defendant's mortgage was executed.

The judgment must be reversed and a new trial granted, with costs to abide the event of the action.

EARL, Ch; J., FINCH and PECKHAM, JJ., concur ; ANDREWS, GRAY and O'BRIEN, JJ., dissent.

---

NOTE.

As to the effect of agent's knowledge, see Constant *v.* University of Rochester, 111 N. Y. 604; Cox *v.* Pearce, 112 Id. 637; Shipman *v.* Bank of State of New York, 126 Id. 318; Slatterly *v.* Schwannecke, 118 Id. 543; Holden *v.* N. Y. & E. Bk. 72 Id. 286; Cragie *v.* Hadley, 99 Id. 131; Welsh *v.* German American Bk, 73 Id. 434; Atlantic State Bk. *v.* Savery, 82 Id. 291.