SAMUEL H. SHOTWELL, Appellant, *v.* BALTIE H. DIXON et al., Defendants; WALTER W. DIXON et al., Respondents.

1. APPEAL — QUESTION OF LAW ON APPEAL FROM REVERSAL. An order of the Appellate Division reversing a judgment of the Special Term and granting a new trial, upon the ground that there was no evidence to sustain a finding of the trial court as to any one of the facts material and necessary to sustain the judgment below, presents a question of law which must be reviewed by the Court of Appeals.

2. Transfers by Insolvent Debtor Prior to General Assignment — Laws of 1887, Chap. 503.　To invalidate transfers in payment of *bona fide* existing debts made by an assignor for creditors after his insolvency and shortly before the assignment, upon the ground that they constitute an unlawful preference within the prohibition of chapter 503 of the Laws of 1887, the evidence must fairly show a knowledge by the creditors that an assignment was contemplated, and that the purpose of the transfer was to give a preference in excess of that allowed by the statute.

3. Insufficient Evidence as to Knowledge of Debtor's Intent to Assign.　A creditor's knowledge that his debtor, at the time of a transfer in payment of the claim, intended to make an assignment for creditors, cannot be inferred so as to invalidate the transfer as a preference in violation of chapter 503 of the Laws of 1887, from the mere fact that the transfer, together with transfers to other creditors, was made the day before the assignment.

4. Trial.　Where no cause of action is established by the plaintiff, defendant is neither required to make a motion for a nonsuit to protect his rights, nor is he called upon to introduce evidence to contradict or explain facts insufficient to establish a liability against him. ·

*Shotwell* v. *Dixon*, 22 App. Div. 258, affirmed.

(Argued March 23, 1900; decided May 1, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 27, 1897, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Andrew J. Nellis* for appellant.　The transfers of property, the conversion of assets into money, or into checks of Littauer Brothers, and the transfers of those checks to the favored creditors, are part of the general assignment made with the intent of the assignors to secure to such creditors an excessive preference when the general assignment was made.　The proofs justify the inference that it was contemplated both by the assignors and the creditor appellants that a general assignment would be necessary and would be made.　(*Brooks* v. *Steen*, 6 Hun, 516; *Becker* v. *Koch*, 104 N. Y. 394.)　The defendants conceded that plaintiff's proof was sufficient to

support the cause of action by failing to move to dismiss the complaint. (*Rouse* v. *Printers' Exch. Co.*, 12 Misc. Rep. 114; *Curtis* v. *S. H. Mfg. Co.*, 7 Misc. Rep. 316; *Morris* v. *Talcott*, 96 N. Y. 100; *Maass* v. *Falk*, 146 N. Y. 34; *Manning* v. *Beck*, 129 N. Y. 1; *Abegg* v. *Bishop*, 142 N. Y. 286.) The defendants not having been sworn as witnesses in the case, the court had the right to assume that the reason each maintained silence was that he was afraid to speak. (*Brooks* v. *Steen*, 6 Hun, 516; *Gardner* v. *Friederich*, 25 App. Div. 521.)

*R. P. Anibal, Clarence W. Smith* and *D. H. McFalls* for respondents. Dixon & Wilkins had the right to pay such of their creditors as they desired. (*Murphy* v. *Briggs*, 89 N. Y. 446; *Knapp* v. *McGowan*, 96 N. Y. 75; *London* v. *Martin*, 79 Hun, 229; *Gomez* v. *Hagaman*, 84 Hun, 148; *Claflin Co.* v. *Arnheim*, 87 Hun, 236; *Delaney* v. *Valentine*, 154 N. Y. 699; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Manning* v. *Beck*, 129 N. Y. 1; *Hoffman* v. *Susemihl*, 15 App. Div. 405.) A creditor has a legal right to obtain payment of or a security for his debt, and thereby obtain a preference for his debt. (*Manning* v. *Beck*, 129 N. Y. 1.) The payments to the creditors upon the thirtieth day of December, and the assignment of Dixon & Wilkins, made and executed on the the thirty-first day of December, were not one and the same act. And neither the assignors nor the creditors knew, at the time said transfers and payments were made and received, that Dixon & Wilkins were about to make a general assignment. (*L. S. Banking Co.* v. *Fuller*, 110 Penn. St. 156; *London* v. *Martin*, 79 Hun, 229; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Manning* v. *Beck*, 129 N. Y. 1; *Abegg* v. *Bishop*, 142 N. Y. 286; *Gomez* v. *Hagaman*, 84 Hun, 148; *Delaney* v. *Valentine*, 154 N. Y. 699; *Johnson* v. *Rapalyea*, 1 App. Div. 463; *Maass* v. *Falk*, 146 N. Y. 34.)

MARTIN, J. For some years anterior to December 31, 1895, the defendants Baltie H. Dixon and George E. Wilkins were,

as copartners, engaged in the manufacture of gloves and mittens under the firm name of Dixon & Wilkins. On the twenty-eighth of that month they ascertained that the firm was insolvent. On Monday, the thirtieth, they made and executed a large number of sales and transfers of their property, the proceeds of which were appropriated chiefly to the payment of the debts of the firm. There may have been one or more instances where a debt, or a portion of a debt, of one of the individual members of the firm was thus discharged, but practically the entire amount received in money, notes, checks or otherwise was applied to the payment of the honest debts of the firm. On the following day they made a general assignment for the benefit of their creditors without preference, except such as the statute requires. Subsequently the plaintiff obtained a judgment against the members of the firm upon an indebtedness created prior to the making of their general assignment, and which remains unpaid.

This action was brought by the plaintiff in his own behalf as well as in behalf of other creditors who might become parties to this suit. Its purpose was to have all the sales and transfers of property by Dixon & Wilkins declared void upon the ground that they were made with an intent to avoid the provisions of the statute restricting preferences under a general assignment, and as a fraud upon the statute and rights of the general creditors, and to have all the property so transferred declared to be a portion of the trust fund created by the general assignment and distributed thereunder.

The case was tried at Special Term, which found that such sales and transfers were made in contemplation of a general assignment for the benefit of creditors, and as a part of an entire scheme to prefer the creditors to whom transfers and payments were made in excess of the amount allowed by statute; that the amount of such transfers exceeded one-third of the assigned estate after making the deductions allowed by law; and that each of the creditors when his debt was paid or adjusted knew that the firm intended to make a general assignment, and accepted such payment with the intent to secure a

greater preference than the statute relating to assignments would permit. The court thereupon directed a judgment appointing a receiver, canceling certain mortgages, requiring the creditors who had been so paid to account to the receiver for all the money that had come into their hands, discharging the assignee named in the assignment, and appointing another, and awarded the plaintiff judgment for costs and disbursements and five per cent additional allowance against six of the defendants named who were creditors and whose debts were paid. Upon appeal to the Appellate Division the judgment of the Special Term was reversed and a new trial granted, with costs to abide the event. From that judgment the plaintiff appealed to this court, stipulating that upon affirmance a judgment absolute should be rendered against him.

It is claimed by the appellant that the judgment was reversed upon the facts, and that as the court failed so to state in its order or judgment, section 1338 of the Code requires us to presume that it was reversed upon the law and not upon a question of fact. If the judgment was reversed upon the facts, the contention of the appellant is entirely correct. (*Bomeisler* v. *Forster*, 154 N. Y. 229, 236; *Parker* v. *Day*, 155 N. Y. 383, 386; *Petrie* v. *Hamilton College*, 158 N. Y. 458, 463; *People* v. *Adirondack R'way Co.*, 160 N. Y. 225, 235.)

But if, as was held by the court below, there was no evidence to sustain the finding of the trial court as to any one of the facts material and necessary to sustain the judgment, then a question of law was presented which must be reviewed by this court. (*Gannon* v. *McGuire*, 160 N. Y. 476; *Canda* v. *Totten*, 157 N. Y. 281; *Spellman* v. *Looschen*, 162 N. Y. 268; *Furner* v. *Seabury*, 135 N. Y. 50, 60; *Hannigan* v. *Allen*, 127 N. Y. 639; *Davis* v. *Leopold*, 87 N. Y. 620.)

It is not claimed that the transfers by Dixon & Wilkins were made with an intent to hinder, delay or defraud their creditors, and consequently void under the statute relating to fraudulent conveyances. (2 R. S. 137, §§ 1, 8.) The sole theory upon which this action was based and has thus far pro-

ceeded, is that these transfers were invalid because in contravention of the provisions of chapter 503, Laws 1887. That statute, so far as material, declares: "In all general assignments of the estates of debtors for the benefit of creditors hereafter made, any preference created therein (other than for the wages or salaries of employees under chapter three hundred and twenty-eight of the laws of eighteen hundred and eighty-four, and chapter two hundred and eighty-three of the laws of eighteen hundred and eighty-six) shall not be valid except to the amount of one-third in value of the assigned estate left after deducting such wages or salaries, and the costs and expenses of executing such trust."

It may be observed in passing that the statute relates only to general assignments for the benefit of creditors and to preferences created *therein*, and does not, in terms, relate to any other transfers or transactions. So that under its provisions, if the language employed was given only its usual and ordinary meaning, it would seem to have no application to a case like this where the transfers were independent of the assignment. But the decisions of this court have given it a broader effect.

Independently of that statute the judgment debtors, although insolvent, had the right to sell and transfer the whole or any portion of their property to one or more of their creditors in payment of or to secure their debts, if that was their honest purpose, although the effect of the sale or transfer would be to place their property beyond the reach of their other creditors and render their debts uncollectible. (*Tompkins* v. *Hunter*, 149 N. Y. 117, 121; *Delaney* v. *Valentine*, 154 N. Y. 692; *Dodge* v. *McKechnie*, 156 N. Y. 514.) That right existed at common law as an incident to the right of property, and still exists except as limited by the provisions of the statute of 1887 and the decisions under it.

In 1891, in *Berger* v. *Varrelmann* (127 N. Y. 281), the question of the effect and operation of the statute of 1887 was under consideration by this court. It was there held that the statute was not confined to preferences in the assignment

itself, but also applied to those created by separate instruments in contemplation of an assignment, and it was intimated that the statute applied to all instrumentalities which the insolvent debtor, in contemplation of a general assignment, voluntarily employed to give a preference, and that the want of knowledge on the part of a creditor so preferred, that an assignment was contemplated, would not avail to validate the preference. From the latter part of that decision three of the judges dissented. This decision was handed down in June, and in the following December the same question arose in the case of *Manning* v. *Beck* (129 N. Y. 1), where the preceding case was considered and limited. It was there in effect said that the provisions of the statute of 1887 were not intended to and did not prevent a creditor from obtaining payment, or security, or a preference for his debt even from an insolvent debtor, but that under the decision in the *Berger* case, if a creditor accepted such security with knowledge that the debtor intended to make an assignment, and that the security was executed in contemplation thereof, it would result in a violation of the statute and the security would be void. It was, however, plainly held that if the creditor accepted the security or payment in ignorance of any such existing intent upon the part of the debtor, the provisions of the statute would not apply and the security would not be rendered invalid by the fact that the debtor thereafter executed an assignment. That case was followed in *Thalheimer* v. *Klapetzky* (129 N. Y. 647).

In January, 1892, in *Spelman* v. *Freedman* (130 N. Y. 421, 429), this court again had the question under consideration, and held that inasmuch as it was in that case alleged and admitted that the acts of the creditors to whom transfers were made were performed in contemplation of an assignment by the debtors, it fell within the principle of the decisions in the *Berger* and *Manning* cases and was an evasion of the statute.

In 1893, the case of *Central Nat. Bk.* v. *Seligman* (138 N. Y. 435) was decided by this court, and it was held that a

preference exceeding one-third of the assets of an insolvent, who made an assignment for the benefit of creditors, given either in the assignment or by a separate instrument, which could be construed as a part of the assignment, did not, in the absence of any question as to the *bona fides* of the debt preferred, render the assignment wholly void; that the statute operated upon the preference only, and not upon the assignment itself or the title of the assignee, and that the rights of creditors could only be asserted by the assignee or by an action in aid of the assignment for the benefit of all the creditors. This decision was followed in *Abegg* v. *Bishop* (142 N. Y. 286).

In 1895, the case of *Maass* v. *Falk* (146 N. Y. 34) was before this court. In that case there was no general assignment, and it was held that the statute of 1887 had no application, and that although the transfers to the bank were of the same date of the transfers to other creditors, still, as no relation between the transaction with the bank and that with the other creditors on the following day was shown, none could be inferred from the similarity of dates.

In *Tompkins* v. *Hunter* (149 N. Y. 117), which was decided in April, 1896, this court held that a sale and transfer by an insolvent of all his property at its full value in payment of debts to but one creditor, without making or contemplating a general assignment, was not within the provisions of the statute of 1887, and the *Berger* and *Spelman* cases were again limited. In that case it was said that the doctrine of those cases was not to be extended.

That case was followed in 1898 in *Delaney* v. *Valentine* (154 N. Y. 692, 699).

Thus we find it firmly established by the decisions of this court that the statute of 1887 applies to other transfers where there is a subsequent general assignment, and the evidence shows that they were made in contemplation thereof and with the intent of avoiding the statute, provided it is proved that the creditors had knowledge of such intent and purpose on the part of their transferrer. But it is equally clear under the

decisions as they now stand that previous transfers to creditors to pay their honest claims cannot be avoided or be held to fall within the statute unless the evidence fairly shows a knowledge on their part that an assignment is contemplated and that the purpose of such transfers is to give a preference in excess of one-third of the estate.

When we examine the proof in this case we find that all the creditors whose debts were paid or secured by the firm of Dixon & Wilkins by transfers preceding the assignment were *bona fide* creditors and that the payments were made upon honest and subsisting debts. This is alleged in the complaint and nowhere denied. It is obvious from the record that these transfers were separate and distinct from the general assignment and none had any direct connection with any other. The various transfers to creditors were executed upon the thirtieth day of December, while the assignment was made on the thirty-first of the same month. We find no proof of any intent on the part of the firm to make an assignment when the transfers were executed, except such as may be inferred from the time when they were made, their number and amount, and the relations of the parties. All the direct proof is to the contrary. One of the members of the firm and their attorney were called as witnesses by the plaintiff, and their testimony tended to show that at the time of these transfers no assignment was contemplated by them, and that none was thought of until the next day when the report that an assignment had been made was found to be in circulation. Hence, if there was any evidence to justify the finding that the firm contemplated making a general assignment when the transfers to its creditors were made, it must be based solely upon the number and character of the transfers and the fact that on the following day it made a general assignment. Perhaps this evidence was sufficient to justify the court in finding as a fact that the members of the firm intended to make such general assignment when the transfers were made. But that alone did not justify the judgment awarded, because if we assume such intent, yet, unless it was known or understood by

the transferees, these transfers are valid. We have examined the record in vain to find any evidence showing such knowledge upon their part, unless it is established by the mere fact that the defendants made these transfers, and on the subsequent day made a general assignment.

While it is true that a material fact may be established by circumstantial evidence, yet the circumstances must be such as to lead fairly and reasonably to the conclusion sought to be established, and fairly and reasonably exclude any other hypothesis. A party relying upon the establishment of a cause of action, or remedy against another, based upon wrongdoing, must show affirmatively facts and circumstances necessarily tending to establish a probability thereof. When the evidence is capable of an interpretation which makes it equally as consistent with the innocence of a party as with his guilt, that meaning must be ascribed to it which accords with his innocence. It can only be so established by proof of such circumstances as are irreconcilable with any other theory than the guilt of the person accused. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 93; *Morris* v. *Talcott*, 96 N. Y. 100; *Baird* v. *Mayor*, etc., 96 N. Y. 567; *Constant* v. *University of Rochester*, 133 N. Y. 640; *Shultz* v. *Hoagland*, 85 N. Y. 464.) A question similar to this, where the circumstances were quite like those in the case at bar, arose in *Maass* v. *Falk* (*supra*), and it was there said : " So far as the evidence discloses, there was no relation, nor connection, between the transaction with the banks and that with the other creditors on the following day. None can be inferred from the similarity of the dates. * * * There is nothing in the evidence which shows, or tends to show, that knowledge and the burden upon the plaintiffs to give such proof was never shifted upon the defendants."

When the evidence in this case is tested by the principle of those decisions, we find it wholly insufficient to establish any knowledge upon the part of the creditors that a subsequent general assignment was contemplated, or even to establish a probability of such knowledge. The proof

was at least as consistent with the theory that they had no such knowledge as with the idea that they possessed it.   It is possible that under the evidence the court may have suspected that such knowledge existed, but a mere conjecture or surmise was not sufficient to authorize a finding to that effect.   To justify such a finding, there should have been sufficient proof to sustain the claim of the plaintiff in that respect.   That it raised a mere conjecture, surmise or speculation is not enough.   (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356, 366; *Pollock* v. *Pollock*, 71 N. Y. 137, 153; *Bond* v. *Smith*, 113 N. Y. 378, 385; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90, 98; *Linkhauf* v. *Lombard*, 137 N. Y. 417, 425; *Hemmens* v. *Nelson*, 138 N. Y. 517; *Hudson* v. *R., W. & O. R. R. Co.*, 145 N. Y. 408, 412; *Laidlaw* v. *Sage*, 158 N. Y. 73, 94.)

These considerations lead us to the conclusion that the learned Appellate Division was correct in holding that there was no testimony to show that the respondents, when they received payment or security for their debts, knew that the firm of Dixon & Wilkins intended to make a general assignment.   Therefore, that court properly reversed the judgment upon a question of law, and its determination should be affirmed.

The contention of the appellant, that the defendants, by submitting the case upon the testimony without making a motion for a nonsuit, conceded that the evidence was sufficient to make the question of the creditors' knowledge one of fact, cannot be sustained.   It cannot be properly held that where a plaintiff fails to establish a cause of action, the defendant, by submitting the case without moving for a nonsuit, supplies the necessary proof, or is to be regarded as waiving his right to raise that question upon appeal.

Nor do we think the appellant's other contention, that because the defendants were not sworn as witnesses in the case, the court may assume that a cause of action exists without the proof necessary to constitute it, can be upheld.   So long as the plaintiff had not established a cause of action

against them, they were neither required to make· a motion for a nonsuit to protect their rights, nor were they called upon to introduce evidence to contradict or explain facts which were insufficient to establish any liability against them.

We think the decision of the Appellate Division was correct; that it properly reversed the judgment upon a question of law arising from the fact that there was no evidence to sustain a finding of the Special Term, which was material and necessary to sustain its judgment, and that the judgment of reversal should be affirmed.

The order should be affirmed and judgment absolute directed for the defendants upon the plaintiff's stipulation, with one bill of costs to the defendants in all the courts.

GRAY, BARTLETT, CULLEN and WERNER, JJ., concur; PARKER, Ch. J., not voting; VANN, J., absent.

Order affirmed, etc.