(158 App. Div. 862.)

MILLER et al. v. BARNETT.

(Supreme Court, Appellate Division, Third Department. November 12, 1913.)

1. PRINCIPAL AND AGENT (§ 100*)—AUTHORITY OF AGENT—NEW LEASE.
   Where a landlord's agent was only authorized to find a tenant, receive rent, and make ordinary repairs, he had no authority to make a new lease or modify the original one so as to provide different terms.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 262–273, 345, 364, 368–373; Dec. Dig. § 100.*]

2. PRINCIPAL AND AGENT (§ 122*)—AUTHORITY—EVIDENCE—DECLARATIONS OF AGENT.
   Authority of an agent cannot be proved by his own declarations.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 416–419; Dec. Dig. § 122.*]

3. PRINCIPAL AND AGENT (§ 148*)—AUTHORITY OF AGENT—NOTICE.
   One negotiating with an agent is put on guard as to the agent's authority.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. § 148.*]

4. LANDLORD AND TENANT (§ 202*)—LEASE—ALTERATION—SCOPE.
   Where a tenant occupied under a written lease providing for monthly payments of rent, an alteration thereof by the landlord's agents reducing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the rent, even with authority, did not relieve the tenant from the duty of paying the rent monthly.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 802–806; Dec. Dig. § 202.*]

5. APPEAL AND ERROR (§ 237*)—MOTION IN LOWER COURT—NECESSITY—DIRECTION OF VERDICT.

In an action for rent, defendant pleaded a modification of the lease by plaintiffs' agents, and, when evidence of such modification was offered, plaintiff objected that there was no proof of the agent's authority, whereupon defendant's counsel assured the court that he would connect plaintiffs with the transaction so as to show the authority, and thereupon the evidence was admitted. Defendant failed to show such authority, and plaintiffs' counsel, instead of moving to strike out the evidence, permitted submission of the question to the jury. *Held* that, while the omission to move for a directed verdict would preclude review of the question on appeal from an adverse judgment alone, the objection was reviewable on appeal from an order denying a new trial; the trial court being authorized in the interest of justice to grant a new trial, notwithstanding plaintiffs' failure to take proper objections or exceptions or make proper motions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1302½; Dec. Dig. § 237.*]

Kellogg, J., dissenting.

Appeal from Trial Term, Rensselaer County.

Action by Elizabeth Miller and others, as surviving trustees, against Cynthia Barnett. Judgment for defendant, and, from the judgment and from an order denying plaintiffs' motion for a new trial, they appeal. Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Peck & Behan, of Troy (Joseph C. Behan, of Troy, of counsel), for appellants.

Salisbury & Rowe, of Saratoga Springs (George R. Salisbury, of Saratoga Springs, of counsel), for respondent.

SMITH, P. J. The plaintiff was the owner of some premises upon which was situated a barn in the village of Saratoga Springs. She appointed S. H. Myers & Co., real estate agents in Saratoga Springs, as her agents to look after the property and procure her tenants therefor. The evidence uncontradicted is to the effect that the authority of said agents did not extend to determining or altering the terms of any lease. Their duties were to procure tenants upon terms specified by the landlord and thereafter to collect rents under a least as made. Negotiations were had between Myers & Co. through one Lefler, one of the firm, and the defendant's husband as the defendant's agent, for leasing the property, the result of which was that a lease was executed by the plaintiff herself with the defendant from May 1, 1910, to May 1, 1911, for $300, payable monthly in advance; the defendant to pay the water rates. This lease was not executed by Myers & Co. as agents for the plaintiff but executed by the plaintiff herself. The rents were payable according to the terms of the lease at the city of Troy. This provision was evidently thereafter waived, as the rents were in

fact collected by Myers & Co. and transmitted to the plaintiff by her consent. The defendant remained in possession of the premises until the 10th day of August, 1912, when this action was commenced to collect the unpaid rent at the rate specified in the original lease up to and including August 1, 1912, amounting to about $200. The defense interposed was that prior to May 1, 1911, the defendant agreed with Myers & Co. that the rent should be only $300 for the ensuing year and releasing the defendant from the payment of the water rates; and further that before the 1st of May, 1912, another agreement was made with Myers & Co. by which the rents were reduced to $200 for the ensuing year. These agreements for a modification of the original lease were positively denied by Myers & Co. The trial judge submitted to the jury: First, whether these agreements were actually made between the defendant and Myers & Co.; and, secondly, whether Myers & Co. had authority from the plaintiff to make the same. From May 1, 1911, to May 1, 1912, the defendant had paid $300, which she claims is in full satisfaction of her rent for that time. The trial judge held if the agreement with Myers & Co. was to rent from the 1st of May, 1912, for $200 a year, that the $200 was not payable until the end of the year, and therefore the terms of the original contract for the payment monthly in advance did not attach, and there was nothing due for the year commencing May 1, 1912. The jury decided both questions submitted in favor of the defendant, and a judgment dismissing the complaint, with costs, was entered against the plaintiff. From this judgment and from an order denying plaintiff's motion for a new trial, this appeal has been taken.

[1, 2] The determination of the jury as to the claimed contract with Myers & Co. cannot be said to be against the weight of evidence. While the contract is positively denied by Mr. Lefler of Myers & Co., with whom the contract is alleged to have been made, and while it would appear he was in a way a disinterested witness, whose testimony was entitled to credit, nevertheless the defendant's witnesses swore positively to such modification, and, notwithstanding they were all members of the defendant's family, the jury had the right to believe their evidence as against the evidence of Mr. Lefler, and their conclusion that these agreements were made with Mr. Lefler must stand as a fact in the case. The finding of the jury that Myers & Co. were authorized to make a new lease is not only against the weight of evidence but is entirely without evidence to sustain it. In the first place the lease as originallly made in 1910 was executed by the plaintiff with the defendant. Myers & Co. were not parties thereto in any way. The authority of Myers & Co. has been shown to be simply to find a tenant, to receive rent, and to make ordinary repairs. It cannot matter what Myers & Co. may have represented to the defendant, as the authority of an agent cannot be proven by the declarations of the agent. It is not pretended that the plaintiff has done any act which may be deemed an admission of the authority of Myers & Co. to make a new lease or to modify the original one. In the absence of express authority in Myers & Co. to make a new lease or modify the original lease, presumed authority therefor can only be found in the acts of the

plaintiff herself or of her general agent, Mr. Hale, and no acts of these parties are attempted to be shown which would either give actual or presumed authority to the agent or would ratify any acts of his in making a new lease. In McAdam's Landlord & Tenant (4th Ed.) vol. 1, p. 914, the text reads:

"An agent may have power to make a contract without having or retaining the power of altering or rescinding it after it has been made. This is readily illustrated by referring to the case of an agent who brings the vendor and purchaser together on a contemplated sale of real estate. When the terms and conditions are agreed upon and a valid contract made, the power of the agent as a rule ceases, and the principals alone are left to determine when and how they will enforce, alter, or rescind the agreement. Upon this principle it has been held that an agent to rent premises and collect rents has no power to consent to the substitution of a new tenant nor to alter or vary the terms of the original hiring, either as to tenure or as to rent."

Among the cases cited in support of the text is the case of Davidson v. Blumor, 7 Daly, 205; Wilson v. Lester, 64 Barb. 431; Wallace v. Dinniny, 11 Misc. Rep. 317, 32 N. Y. Supp. 159. In Fleming v. Ryan, 9 Misc. Rep. 496, 30 N. Y. Supp. 224, the headnote reads:

"Authority to make a lease cannot be implied from the mere fact that a person is authorized to collect rents and inquire of tenants if they desire to retain the premises for another year. Agency cannot be established by statements of the alleged agent made in the course of the particular transaction."

[3] It is a well-settled principle of law that a party negotiating with an agent is put on his guard as to the authority of the agent. Without any right in Myers & Co. either to substitute a new lease or to modify the old one, the holding over of the defendant is in law presumed to be under the terms of the original lease. So that plaintiff is clearly entitled upon the facts shown in the case to the judgment for which she asks.

[4] While under this view of the case it becomes immaterial, it is perhaps well to note that there was at no time any attempt to create a new lease. Occupying the premises under a written lease with specified terms of payment, even if Myers & Co. had authority to alter the lease, the only attempted alteration was as to the gross sum payable for rent. That part of the lease which called for payments per month in advance was not attempted to be changed. So that, even if Myers & Co. had authority to alter this lease as to amount of rent, the plaintiff would be entitled to recover for the months of May, June, July, and August, 1912, for the stipulated rent for those months.

[5] It is contended by the respondent, however, that plaintiff has forfeited her rights in this action by reason of the neglect of her attorneys to make proper objection and take exception and make proper motions at the trial. When the evidence as to the modification of the lease by Myers & Co. was offered, the plaintiff's counsel stated fully his claim that there was no authority in Myers & Co. to make such alteration. The defendant's counsel then assured the court that he would connect the plaintiff with the transactions so as to show authority to make such alteration. Upon his assurance was the evidence admitted. When thereafter the defendant failed to show circumstances from which authority could be implied, the plaintiff's attorney should

properly have moved to strike such evidence from the case. This he failed to do. At the end of the case the plaintiff should have moved for a directed verdict, at least for the advanced monthly payments for the year 1912. This he failed to do and allowed the trial judge to submit to the jury without objection the questions of fact as to the actual making of the modification and the authority of Myers & Co. to make the same. If this were an appeal from a judgment alone, this neglect of the attorney would have forfeited the plaintiff's rights. But the plaintiff thereafter made a motion for a new trial under section 999 of the Code of Civil Procedure. Upon that motion the trial term had authority, if the interests of justice so required, to grant a new trial, notwithstanding any failure on the part of the attorneys to take proper objections or exceptions or to make proper motions. In review of this order denying the motion for a new trial, we have the same right, due weight being given to the determination of the trial judge, that justice did not so require. If I am right in the conclusion which I have reached that upon all the evidence in the case no defense has been established and the plaintiff is clearly entitled to the relief asked for, it becomes our duty to set aside this judgment and grant a new trial.

It is contended that by failing to move for a directed verdict the plaintiff has acquiesced in ruling that there were questions of fact for the jury, and by failing to except to their submission to the jury he has consented to abide by their decision, whether or not there was any evidence to authorize such submission. Defendant's contention thus stated is not without authority. The Court of Appeals has consistently held that a failure by defendant to move for a dismissal of the complaint concedes that there is a question for the jury. See Hopkins v. Clark, 158 N. Y. 299, 53 N. Y. Supp. 27. The rule as thus stated by the Court of Appeals was for a time adopted by some of the Appellate Divisions of the state as the rule guiding their right to review. The fact was lost sight of that the right of review in the Appellate Division upon an appeal from an order denying a motion for a new trial was much broader than the right of the Court of Appeals in review of appeal from a judgment. Later this distinction was announced by the Court of Appeals itself in the case of Alden v. Knights of Maccabees, 178 N. Y. 541, 71 N. E. 106. In that case Judge Cullen in writing the opinion says:

"The learned Appellate Division, however, was of opinion that the trial court erred in excluding the evidence offered by the plaintiff to show that the answer of the deceased was made in compliance with the direction of one of the managing officers of the company. It held that it was authorized to review this ruling, though no exception to it was taken on the trial. There can be no doubt as to the broad supervisory power possessed by the Appellate Division over trials had in the Supreme Court. It may reverse on questions of fact; it may reverse because the action has been submitted on an erroneous theory, because one of the parties has been taken by surprise, or because of the admission or rejection of improper evidence, though no exception to the ruling be taken, provided that the jurisdiction of the Appellate Division is properly invoked. But, in the case of jury trials, to invoke the supervisory power of the Appellate Division a motion for a new trial must be made, and from the order denying the new trial an appeal must be taken to that branch of the court."

It has always been held that, upon an appeal to the Appellate Division from the judgment alone, error could not be claimed except through an exception taken at the trial. Gillett v. Trustees of Kinderhook, 77 Hun, 604, 28 N. Y. Supp. 1044; Perry v. Village of Potsdam, 106 App. Div. 297, 94 N. Y. Supp. 683. Where, however, the appeal is from an order denying a motion for a new trial, the Appellate Divisions have authorized a review of errors, though no exception be taken at the trial. McGrath v. Home Insurance Co., 88 App. Div. 153, 84 N. Y. Supp. 374, explained Perry v. Village of Potsdam, 106 App. Div. 298, 94 N. Y. Supp. 683; Raible v. Hygienic Ice & Refrigerating Co., 134 App. Div. 705, 119 N. Y. Supp. 138; Weizinger v. Erie R. R. Co., 106 App. Div. 411, 94 N. Y. Supp. 869; Goldman v. Swartwout, 117 App. Div. 185, 102 N. Y. Supp. 302; Caciatore v. Transit Construction Co., 147 App. Div. 676, 132 N. Y. Supp. 572; Spencer v. Hardin, 149 App. Div. 667, 134 N. Y. Supp. 373. It is true that there are cases in the Appellate Division, especially cases in the Second Department, which seem to hold the same strict rule as upon an appeal from a judgment alone. The later cases, however, even in that department, seem to vary that rule, as indicated in the case of Caciatore v. Transit Construction Co., cited supra. In Viele v. Mack Paving & Construction Co., 150 App. Div. 840, 135 N. Y. Supp. 148, Justice Burr writes:

"Having determined to take his chances with the jury he should be content with the verdict rendered, unless clearly against the weight of the evidence, since he urges no exception."

Whatever rule may be deduced, however, from the varying and inconsistent decisions in the Appellate Divisions, the Court of Appeals has settled the rule in the case of Shotwell v. Dixon, 163 N. Y. 43, 57 N. E. 178. In that case the headnote reads:

"Where no cause of action is established by the plaintiff, defendant is neither required to make a motion for a nonsuit to protect his rights nor is he called upon to introduce evidence to contradict or explain facts insufficient to establish a liability against him."

At page 53 of 163 N. Y., page 181 of 57 N. E., Judge Martin writing for the court says:

"The contention of the appellant, that the defendants, by submitting the case upon the testimony without making a motion for a nonsuit, conceded that the evidence was sufficient to make the question of the creditors' knowledge one of fact cannot be sustained. It cannot be properly held that, where a plaintiff fails to establish a cause of action, the defendant, by submitting the case without moving for a nonsuit, supplies the necessary proof or is to be regarded as waiving his right to raise that question upon appeal."

This authority seems to me decisive of the question at issue.

In the case at bar there was no evidence whatever of any authority in Myers & Co. to alter this lease. The trial judge left the jury to say whether Mr. Lefler's conduct with reference to this property was such as to justify a belief on the part of the defendant that he had the power as plaintiff's agent to rent this property upon such terms as he and the customer could agree upon. With uncontradicted proof that actual authority did not exist, he has allowed the jury to infer

authority from the act of the agent himself, with which the principal was in no way connected. Both upon reason and authority agency could not be so established, nor could an estoppel against the principal be thus substantiated.

The judgment and order should be reversed upon law and fact and judgment directed for the plaintiff for the sum of $209.95, with interest from the 10th day of August, 1912. The finding of fact of which the court disapproves is that Myers & Co. were authorized to alter the original lease made between the plaintiff and defendant; the court holding that there was no evidence upon which such finding can be justified.

Judgment and order reversed on law and facts, and judgment directed for the plaintiffs for $209.95, with interest from August 10, 1912, with costs. The finding of fact of which the court disapproves is that Myers & Co. were authorized to alter the original lease made between the plaintiffs and defendant; the court holding that there was no evidence on which such finding could be justified. All concur, except KELLOGG, J., writing for reversal and judgment for $66.66, with interest.

JOHN M. KELLOGG, J. (dissenting). The plaintiffs' agent, Lefler, agreed upon the terms of a lease with the defendant for one year at $350 per year, the defendant to pay the water rates. The plaintiffs personally had no part in the negotiations. They executed the written lease, and it was delivered by the agent to the defendant after she signed it. The lease provided that the rent should be paid in Troy monthly in advance; it was, however, paid to the agent at Saratoga, and he remitted the amount, less his commissions, to the plaintiffs. The lease was otherwise carried out according to its terms, and the rent paid. There is no claim that the terms of the lease were in any way changed by the agent, or otherwise. The term expired May 1, 1911. The defendant remained in possession for the year 1911, and was in possession in August, 1912, when the plaintiffs brought this action to recover rent, claiming that the defendant was holding under the original lease.

The defendant claimed that at about the time of the expiration of the written lease it was agreed with the agent that the rental should be $300 per year. For the year ending May 1, 1912, $300 only was paid for rent. For the years 1911 and 1912 the plaintiffs paid the water rates. The court left it to the jury to determine (1) whether the agent had the power to rent the premises upon new terms, and (2) whether in fact he did so rent them; and the jury upon sufficient evidence have found with the defendant upon both of those questions. The agent from time to time made repairs upon the premises, and permitted the defendant to repair and deduct the amount from the rentals, and the defendant's testimony tends to show that he had entire control of the premises. The agent and the plaintiff Hale swear that the agent had no power to fix the terms of the lease, but that he was only authorized to obtain tenants and collect rents, the premises to be rented upon terms to be fixed by the plaintiffs. The fact that but $300 was paid for the second year, and that for the second and third

year the plaintiffs paid the water rates, tends to corroborate the defendant's version that a change was made in the terms of the lease. The plaintiffs knew that they had had no arrangement with the defendant by which they were to pay the water rates; they therefore must have understood that the agent had made some new arrangement. Otherwise there is no explanation as to why they paid the water rates.

Upon defendant's theory the agent had charge of the premises, with full authority to lease them. She had had no relations with any one else. The defendant's husband had formerly been the owner of the premises, and when the change of ownership took place, Mr. Hale, one of the plaintiffs, inquired of him "who would be a good man to put the property in the hands of to rent," and he recommended Lefler as such agent. When the evidence was offered as to the oral lease with Lefler, it was objected to, upon the ground that he had no authority to rent the premises. The court ruled:

"Subject to your connecting, as you state you will, the testimony of Mr. Barnett, together with the further fact that Mr. Lefler had been collecting the rent all the time, I will let you ask the question."

At the close of the case no objection was made that authority was not fully shown. The court left it to the jury to determine upon the evidence, as a matter of fact, whether authority was shown. Plaintiffs raised no further objection, and evidently were satisfied that the case should be decided as a question of fact. The plaintiff Hale was interested in the result. It was also a question for the jury to determine how far the circumstances made Lefler interested, and how far they should give credence to his testimony. If Lefler remitted the rentals, less his commissions, the plaintiffs were fairly chargeable with knowledge that but $300 had been paid for the year expiring May 1, 1912. The written lease was fully performed; the sole question is whether the agent made a new lease after the first one expired, and whether he had such authority depended upon the apparent authority with which the plaintiffs clothed him and the entire acts of the parties and the history of the transaction. The premises were an old livery stable, badly out of repair, and not desirable for rental purposes. The finding of the jury is amply sustained by the evidence, both as to the authority of Lefler and the several agreements for rental.

The finding that the original rental was for $350, payable monthly in advance, and for the second year $300 per year, all of which was paid prior to the termination of the year, and the finding that for the third year the rent was fixed at $200, does not establish that the rental of the last year was not to be paid until the expiration of the time. There was no change in the terms of the lease as to when the rent should be paid. It was, therefore, payable monthly. The jury, therefore, should have rendered a verdict for the plaintiffs for four months' rental, at the rate of $200 per year, with interest. Under section 1317 of the Code of Civil Procedure we may direct such judgment. Crowe v. Liquid Carbonic Co., 154 App. Div. 373, 139 N. Y. Supp. 587.

The judgment is therefore reversed, and judgment directed for the plaintiffs for $66.66, with interest thereon from August 1, 1912, with costs in the court below and in this court.