PASQUALE LONGO, Respondent, *v.* BOOTH & COMPANY, INC., Appellant.

Second Department, March 19, 1920.

Negligence — injury to longshoreman struck by end of wire rope while employed by stevedore in unloading cargo — evidence — inference of lack of care on part of stevedore — failure of defendant to contradict plaintiff's evidence.

In an action by a longshoreman employed by a contracting stevedore as a gangwayman at a discharging hatch of a ship, to recover for personal injuries sustained by being struck by the end of a wire rope which parted, it appeared that the ends of the rope were ragged and it was described as " rusty " where the break occurred. The testimony was given in Italian sea language which the interpreter confessed was hard to understand.

*Held*, on all the evidence, that a judgment in favor of the plaintiff should be reversed and a new trial granted.

Although such a break might perhaps call on the *ship* for explanation, an
  inference of failure of care on the part of the stevedore does not follow.
The election of the defendant to stand on the plaintiff's proof and offer no
  evidence cannot be used against it, since plaintiff had not made a case.

APPEAL by the defendant, Booth & Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 3d day of March, 1919, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 10th day of March, 1919, denying defendant's motion for a new trial made upon the minutes.

*Clarence S. Zipp* [*Henry Bogert Clark* and *Amos H. Stephens* with him on the brief], for the appellant.

*William Adams Robinson,* for the respondent.

PUTNAM, J.:

Plaintiff was one of a gang of longshoremen who were unloading cargo from hatch No. 3 (which was abaft the bridge) of the steamer *Inverclyde,* lying at the foot of Forty-second street, Brooklyn.

Booth & Company, Inc., is not a ship-owning corporation, but a contracting stevedore.

Plaintiff was a gangwayman at the discharging hatch. A mast is mentioned as between hatches 3 and 4. The story of this mishap comes to us from testimony given in Italian sea language, which the interpreter confessed was hard to understand. He suggested, " If you had a model, it would be easier." Then some one made a rough drawing, showing a lower mast and a topmast, putting into the witness's mouth the words " mainmast," " topmast," by the questions, " Is that right?"

The witness also spoke of a rope leading forward from the topmast to the bridge. As shown in the sketch, it looks like a " stay." Whatever it was, about seven P. M., a boom, mast or spar parted, leaving such wire rope hanging slack. The hoisting stopped. The gang's foreman then called out to some officer of the *Inverclyde* whom the witnesses miscall the ship's " purser," who with seamen and longshoremen put up a wire

rope hanging down from the mast and not before in use, which was then drawn tight, apparently to a fastening at the bridge. Four or five drafts followed this substitution, when this wire rope parted and the end struck plaintiff and knocked him unconscious.

The evidence of defect relied upon is not clear. The rope was painted black. It parted near the foot, where the break could be seen. The ends were ragged, some broken strands longer than others, and it is described as " rusty," where the break was. A good wire rope, if pulled apart, may show ragged ends. The office and purpose of this rope are not made clear. Such a break perhaps might call on the *ship* for explanation. (*The Rheola,* 7 Fed. Rep. 781; 19 id. 926; *The Carolina,* 30 id. 199; 32 id. 112.) But an inference of failure of care on the part of the stevedore does not follow.

Defendant (who had a foreman present) offered no evidence, but elected to stand on the plaintiff's proofs. This was, however, its right. The failure to contradict cannot be used against defendant if plaintiff had not made a case. (*Shotwell v. Dixon,* 163 N. Y. 43, 53.)

So I recommend to send back the cause for retrial, when these longshore witnesses, through a competent interpreter, can make clearer how such accident happened.

The judgment and order should, therefore, be reversed and a new trial granted, with costs to abide the event.

JENKS, P. J., MILLS and KELLY, JJ., concur; BLACKMAR, J., concurs on the ground that the doctrine *res ipsa loquitur* is not applicable to the facts in the case. The mere breaking of the cable is not evidence that the stevedore failed in the duty of inspection.

Judgment and order reversed and new trial granted, with costs to abide the event.