Henry Epstein, J.
This is an action to recover moneys paid into a business enterprise and for damages. While the prayer for relief asks a rescission of the contract of sale of a restaurant and bar, the complaint pleads a rescission in fact and the prayer for relief to that effect was abandoned at the outset of the trial. Defendants Bebe and Bebe Enterprises, Inc., plead a general denial and a counterclaim founded on alleged breach of contract for losses sustained by said defendants. The State Liquor Authority was impleaded and served but has interposed no answer and did not appear on the trial. Defendant Bebe was the sole stockholder of the defendant corporation’s 10 shares of stock outstanding. Defendant corporation owned and operated a bar and restaurant properly licensed for on premises consumption at 310 West 58th Street, New York City. About December 6, 1956 plaintiff’s uncle, George Volanis, contracted in writing to purchase 70% or 7 of the 10 outstanding shares of stock in Bebe Enterprises, Inc. To bind the agreement this plaintiff gave his check for $1,500 on behalf of Volanis, plaintiff’s uncle, and for whom plaintiff was purchasing the restaurant and bar. Plaintiff is an engineer and architect, educated abroad, with no experience in the restaurant business, but who was seeking to finance his uncle in the business. After the contract had been signed the uncle sought to withdraw from the contract and plaintiff stopped payment on his check for $1,500.
Confronted with possible law action, plaintiff decided to make the purchase himself and, therefore, entered into practically the identical agreement with defendants. This contract is dated January 2, 1957. The purchase price for the 70% or seven shares was fixed at $60,000 with an option, subsequently exercised, to purchase the balance of three shares from Bebe for an added $15,000. The inventory of merchandise and taxes were in addition. On signing the contract a deposit of $4,000 was paid. Plaintiff had an attorney in New Jersey examine the original contract of Volanis, his uncle, and did not have counsel to advise him further. After the contract had been signed he asked counsel for the seller to apply for the change in corporate ownership and approval by the State Liquor Authority. This was done. Plaintiff entered the premises as owner on or about January 11, 1957 and proceeded to operate the business. Volanis was retained by plaintiff as manager. There were removed from the premises by Bebe, the seller, some articles not belonging to the premises, an antique clock, some candelabra and a grand piano. These were taken away by January 10, 1957 and no protest evidenced as plaintiff pro *207 ceeded to take over and, with Volanis, operate the restaurant and bar. By April 3, 1957 the application for change in corporate ownership (as to the 70% of stock sold) was approved by the State Liquor Authority and a closing set for April 30, 1957. By this time plaintiff had retained counsel, M. A. Morrison, Esq., his trial attorney. By this time also details of the deal seem to have been agreed upon. The series of promissory notes making up the bulk of the purchase price were executed; the payment of the $4,000 for the landlord, and the notes, etc. were entrusted to defendants’ counsel, Saunders, in escrow, pending final closing.
Apparently plaintiff was satisfied with the business from the time he took over in January, until May, 1957. The gross income ranged from $11,837 in January to $7,250 in April. In early May, 1957 plaintiff closed up for several days while he had alterations and improvements made in both men’s and women’s rest rooms. Partly due to this and other possible causes the May receipts dropped to $3,460. Testimony of the accountant, who acted for both plaintiff and defendants, revealed that contrary to plaintiff’s testimony, plaintiff had drawn funds from the business in addition to his uncle Volanis’ own salary. In May plaintiff became disillusioned and asked Bebe to “ take back ” the business and return his money. On June 8, 1957 the restaurant was closed by plaintiff. In order to minimize damages both plaintiff and defendant, on the sound advice of both counsel, agreed on June 13 (without prejudice to their respective claims) to allow Bebe to retake the business and seek to dispose of it. Defendant Bebe did obtain as a purchaser Harry L. Jessop, an attorney, who purchased the corporate stock (all 10 shares) for $61,000, and with other assets and license refund allowed, a total of $70,459. Jessop’s testimony bears out defendant’s contentions that plaintiff’s claims are largely without support. Plaintiff’s counsel’s testimony that he allowed or advised his client to sign the April 30, 1957 ‘ ‘ incomplete closing ’ ’ statement as a proof of good faith and to refute defendants’ charges of bad faith, gives no support to plaintiff’s case. The terms of that “ closing” are explicit and without any claim of misrepresentation by defendants. Over a month later plaintiff sought to escape from his obligations by demanding on June 13, 1957, the return of his money.
The significant facts which stand out in this case are briefly these: Plaintiff first paid by a cheek for $1,500 a deposit to bind an agreement by his uncle Volanis to purchase the business. He then stopped payment and to avoid litigation and *208 hoping to purchase a good business, himself entered into the identical contract for purchasing the restaurant and bar. He consulted an attorney in New Jersey where he lives. Plaintiff’s attempt to charge counsel for defendants with dual allegiance is wholly without merit. Plaintiff and defendant Bebe contracted in good faith. Beginning January 11, 1957 plaintiff took over the business and, with his . uncle Volanis as manager, continued to operate it until June, 1957 when he closed up. Meanwhile plaintiff had extensive repairs and changes made. When defendant undertook on June 13, 1957 to find a purchaser, there were outstanding bills of some $8,733 which were taken care of by Bebe before the resale. A brokerage commission of $3,250 was also paid when the business was disposed of for $61,000. Thus there is a calculable loss to defendant Bebe of $14,000, the difference in purchase price between the sale to plaintiff and that to Jessop, the ultimate purchaser secured by Bebe; a brokerage fee of $3,250 paid on said resale; unpaid bills of $8,733 assumed and settled by defendant. The total calculable damages suffered by defendant Bebe amounts to $25,987.
As against this plaintiff has shown payments of $4,000 on January 2, 1957 when the agreement of that date was signed; payments totalling $5,500 on or about April 23, 1957, and a total of additional expenditures on behalf of corporate debts, etc., of $6,373.81. Thus plaintiff may offset the defendant’s losses by that amount, $15,873.81, leaving a net balance due to defendant Bebe on his counterclaim of $10,113.19, for which sum judgment may be entered for said defendant Bebe, with interest from June 13, 1957.
Plaintiff sought to escape one bad bargain made for his uncle. He followed this by making a bad bargain for himself. His attempt to burden defendant Bebe with his own shortcomings cannot in conscience be allowed. There is no fraud established by convincing proof of a factual character — the sine qua non of an action in this category (Uhlmann v. Hammons, 74 N. Y. S. 2d 66). That burden of proof as required by Shotwell v. Dixon (163 N. Y. 43, 52) is missing. The evidence in the case at bar is far more consistent with good faith of defendant than of plaintiff.
Judgment to be entered dismissing the complaint on the merits and for defendant Bebe on his counterclaim for $10,113.19. Findings and conclusions having been waived, the above constitutes the decision in the case.