## PEOPLE v. GRESSER.

(Supreme Court, Trial Term, Queens County. July 25, 1910.)

1. CRIMINAL LAW (§ 627½*)—INSPECTION BY ACCUSED OF MINUTES OF GRAND JURY.

Where the district attorney consents to an inspection by accused of the minutes of the testimony before the grand jury, and states that the indictment was found against his advice to the grand jury that the testimony was insufficient, the court will grant an inspection of the minutes by accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1431; Dec. Dig. § 627½.*]

2. INDICTMENT AND INFORMATION (§ 10*)—FINDING OF GRAND JURY—EVIDENCE.

Under Code Cr. Proc. §§ 256, 258, 389, providing that the grand jury can receive only legal evidence, and that an indictment should be found only when all the evidence is such as, if unexplained, will warrant a conviction by a trial jury, etc., the prima facie guilt of accused on the unexplained evidence presented to the grand jury must appear beyond a reasonable doubt to justify an indictment.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 54; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 753*)—TRIAL—DIRECTION OF VERDICT.

Where the court at any time, after the evidence on either side is closed, deems it insufficient to warrant a conviction, it may advise the jury to acquit, and that advice must be followed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1713, 1727–1730; Dec. Dig. § 753.*]

4. INDICTMENT AND INFORMATION (§ 137*)—MOTION TO SET ASIDE—GROUNDS.

The court on the motion of accused to set aside the indictment is not limited to the grounds set forth in Code Cr. Proc. § 313, enumerating the grounds on which an indictment may be set aside on motion; but the court may set aside an indictment found without evidence or on illegal evidence.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 483; Dec. Dig. § 137.*]

5. INDICTMENT AND INFORMATION (§ 137*)—MOTION TO SET ASIDE—GROUNDS—ILLEGAL EVIDENCE.

Where there is sufficient legal evidence to sustain an indictment, it will not be set aside because of illegal evidence.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 483; Dec. Dig. § 137.*]

6. MUNICIPAL CORPORATIONS (§ 174*) — OFFICERS — OFFENSES — STATUTES — "FALSE AUDITING AND PAYING OF CLAIMS."

The elements of the offense denounced by Penal Law (Consol. Laws, c. 40) § 1863, punishing the false auditing and paying of claims, are that accused is a public officer of a city; that it is a part of his duty to audit, allow, or pay a claim against the city; and that he knowingly in any way connives at the auditing, allowance, or payment of a false claim.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 174.*]

7. EVIDENCE (§ 587*)—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.

In a civil action, a material fact may be established by circumstantial evidence such as to fairly and reasonably lead to the conclusion sought to be established, and to fairly and reasonably exclude any other hypothesis, and, where the evidence is capable of an interpretation equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed to it which accords with its absence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2436; Dec. Dig. § 587.*]

8. CRIMINAL LAW (§ 552*)—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.

The guilt of one charged with crime may be proved by circumstantial evidence, provided his guilt is thereby shown beyond a reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1257–1262; Dec. Dig. § 552.*]

9. MUNICIPAL CORPORATIONS (§ 174*)—OFFICERS—OFFENSES—EVIDENCE.

To justify the conviction of an officer for falsely auditing and paying claims in violation of Penal Law (Consol. Laws, c. 40) § 1863, the knowledge of accused must be shown to be knowledge that the claim, when certified to, was false and fraudulent, and there must be clearly inferable a criminal intent to do the wrongful act.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 174.*]

10. CRIMINAL LAW (§ 568*)—EVIDENCE—SUFFICIENCY.

Where an act has no necessary element of criminal character, the guilty intent of accused becomes an independent fact and must be proved accordingly.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1271; Dec. Dig. § 568.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

11. INDICTMENT AND INFORMATION (§ 10*)—FINDING OF GRAND JURY—EVI-
DENCE—SUFFICIENCY.

Evidence *held* insufficient to justify an indictment charging a violation
of Penal Law (Consol. Laws, c. 40) § 1863, punishing the false auditing
and paying of claims against a city.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig.
§ 10.*]

Lawrence Gresser was indicted, and he moves for leave to inspect
the minutes of the testimony presented to the grand jury and to set
aside and dismiss the indictment. Granted.

See 134 App. Div. 938, 118 N. Y. Supp. 1135.

Fred. G. De Witt, Dist. Atty., for the People.

Clarence Edwards, for defendant.

GARRETSON, J. The defendant has been indicted by the grand
jury of this county for the crime of "conniving at the auditing and
allowance of a fraudulent claim against the city of New York."

Upon his arraignment the defendant questioned the sufficiency of
the evidence to warrant the finding of the indictment, and, to the end
that he might thereupon move that the indictment be set aside, he has
asked that he be allowed to inspect the minutes of the testimony pre-
sented to the grand jury. To such inspection the district attorney
has consented; it appearing from his statement in open court that
the indictment was found notwithstanding his advice to the grand
jury that there was not sufficient legal evidence before them to jus-
tify it. Upon such consent, and under these somewhat exceptional
circumstances, an inspection of the minutes of the testimony has been
granted.

The defendant now moves that the indictment be set aside and
dismissed upon the following grounds: (1) That the grand jury re-
ceived illegal evidence and based said indictment thereon. (2) That
the said indictment was found by the grand jury without any legal evi-
dence to support the same. (3) That the evidence received by the
grand jury was insufficient to warrant the finding of the indictment.

It is well settled, both in law and practice, that the grand jury can
receive none but legal evidence (Code Cr. Proc. § 256); that they
should find an indictment only when all the evidence before them,
taken together, is such as in their judgment would, if unexplained or
uncontradicted, warrant a conviction by the trial jury (Id. § 258);
and that at all times (which includes the proceedings in the grand jury
room) the defendant is presumed to be innocent until the contrary is
proved (Id. § 389).

Since the grand jury should find an indictment only when all the
evidence before them taken together is such as in their judgment
would, if unexplained or uncontradicted, warrant a conviction by the
trial jury, it logically follows that, prima facie, the defendant's guilt
must appear beyond a reasonable doubt, for if upon a trial, and at any
time after the evidence on either side is closed, the court deems it
insufficient to warrant a conviction, it may advise the jury to acquit

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the defendant, and they must follow that advice. Id. § 410; People v. Brickner, 8 N. Y. Cr. R. 217, 15 N. Y. Supp. 528.

That the court may upon the defendant's motion inquire into the sufficiency of the evidence, and that the right to have an indictment set aside is not limited to the grounds specifically set forth in section 313 of the Code of Criminal Procedure, has been decided by the Court of Appeals in People v. Glen, 173 N. Y. 395, 66 N. E. 112, in the report of which case it is said:

"Our courts have always asserted and exercised the power to set aside indictments whenever it has been made to appear that they have been found without evidence, or upon illegal and incompetent testimony. This power is based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution. It is a power which the Legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to affect either of these ends, they are unconstitutional."

Of the first ground of the motion it may be said that if illegal evidence was considered by the grand jury, yet if there is sufficient legal evidence to sustain the indictment, it will not be set aside because of the illegal evidence. The several grounds of the motion, however, are practically resolved into a single comprehensive one, and the argument has been had thereupon, viz., that the evidence received by the grand jury was insufficient to warrant the finding of the indictment. This is a question of law and alleges a violation of a constitutional right.

The indictment charges an offense under section 1863 of the Penal Law (Consol. Laws, c. 40) former Penal Code, § 165, which, so far as germane to the motion, is as follows:

"A public officer or a person holding or discharging the duties of any office or place of trust * * * in any * * * city, * * * a part of whose duty is to audit, allow or pay, or take part in auditing, allowing or paying claims, or demands upon * * * such * * * city, * * * who knowingly audits, allows or pays, or directly or indirectly consents to, or in any way connives at the auditing, allowance or payment of any claim or demand against * * * such * * * city * * * which is false or fraudulent or contains charges, items or claims which are false or fraudulent, is guilty of felony," etc.

The constituent elements of the offense thus defined, and with respect to which the indictment is framed, are: (1) That the defendant is a public officer of a city; (2) that it is a part of his duty to audit, allow, or pay or take part in auditing, allowing, or paying a claim or demand upon the city; (3) that he knowingly in any way connives at the auditing and allowance or payment of a claim or demand against the city which is false or fraudulent.

The indictment is in form in accordance with the case of People v. Fielding, 36 App. Div. 401, 55 N. Y. Supp. 530, where it was held that, even though the defendant was not an auditing officer, the certification by him in due course to the auditing officer that a false and fraudulent claim against the city was a lawful demand was a taking part in the audit and allowance of the claim. It is not alleged that it has not been shown that the defendant was a public officer and the president of the borough of Queens, or that Herman A. Metz was the

comptroller and the chief auditing officer of the city at the time of the alleged offense; nor is it questioned that it was part of the defendant's duty to take part in auditing and allowing claims upon the city of the character of the claim in question. For the purposes of this motion it will be assumed, but it is not so decided, that this claim was in fact a false and fraudulent claim.

It is charged in the indictment, among other things not requisite to recite, that the defendant as such public officer did knowingly, willfully, and feloniously consent to and connive at the audit and allowance of a certain claim against the city which was false and fraudulent, and which said bill, claim, and demand was substantially as follows:

"Long Island City, July 27, 1909.

"The City of New York, Bureau of Highways Borough of Queens, to Louis Cohn, Dr.

"To furnishing necessary labor and material to rebuild stone wall, brick arches and concrete wall above side wall on Central avenue, St. Albans, Jamaica................................. $852 00".

—and did indorse and sign on said bill his approval thereof as follows:

"I hereby certify that I have examined the above account and believe it to be correct. That the prices charged are just and reasonable and such services as are specified have been properly performed for the purposes of the city of New York, and that the payment of the amount of such account will not exceed the unexpended balance of the sum duly appropriated by law for the purpose thereof"

—intending thereby to influence the comptroller to audit the same, and that the same was thereafter audited by the said comptroller.

During the time intervening the argument of the motion and this writing, I have carefully read and considered every line of the somewhat voluminous testimony, oral and written, which goes to make up the minutes of the grand jury, and that with due regard to the rights of the people as well as of the defendant. This record shows that the inquiry was had concerning the possible criminal connection of John M. Phillips and others with the claim above mentioned and similar claims of like nature, and that out of a large mass of testimony taken, much of which is irrelevant to the subject-matter of the indictment and legally incompetent in respect thereto, the indictment must be assumed to be based.

There is no record of an independent inquiry into the offense charged against the defendant, and it is fairly inferable that, had such inquiry been had and been confined to the legal and material evidence relevant to such alleged offense, a different conclusion would have been reached by the grand jury.

It appears that the claim in question originated upon an "open market order," so called, and that the work was contracted to be done and certified to have been completed in the usual course of the disposition of the business of the borough president's office. The minutes are utterly barren of testimony that at any time from the inception of the work was the defendant a participant in or cognizant of any

wrongful or unlawful act or scheme in, growing out of, or connected with the ordering or performance of the work. It had been the custom of both the defendant and his subordinate, Alfred Denton, the commissioner of public works, to certify to the correctness of like claims (the latter having been duly authorized by the defendant so to do) whenever the same were brought to the attention of either in the ordinary course of business, and had the necessary vouchers and certificates in proper form attached thereto. When the occurrences transpired which bear upon the defendant's alleged knowledge that the claim in question was false and fraudulent, Mr. Denton was upon his vacation, although at intervals in the city. The claim referred to in the indictment came to Mr. Denton for certification to the comptroller, in the first instance, from John M. Phillips, who had asked him to certify to it. Casting aside so much of the record of the testimony as is irrelevant, immaterial, incompetent, opinionated, and conjectural, that part thereof which can be considered upon the question of guilty knowledge by the defendant that the claim was false and fraudulent is the following from Mr. Denton's testimony (referring to a conversation had by him with the defendant):

"I simply told him in substance what happened; that the bill had been brought to me at Rockaway, and that Phillips sent it, and I would not sign it, and he wanted me to sign it, and I would not sign, and he wanted me to sign it in the jail and in the hall, and told him the circumstances, and that I did not think Mr. Phillips was acting right. I did not know anything about the bill particularly. I told him to look into the matter. I was on my vacation, and I was going back to Rockaway, and to look into it. * * * Q. Did you tell Mr. Gresser you thought there was something queer about these things? A. I told him I would not trust Phillips. I did not classify the bill at all. I told him I would not sign the papers; I wanted to look into it. I was going back on my vacation, and he should look it up. * * * After I spoke to the borough president, I had a conversation with him about it the next day. I never spoke to him about it. * * * I told him I did not know how Phillips got the papers. He said he did not know. He said no doubt some one handed them to him. He said I took Phillips a little too serious, something like that. * * * I told him the nature of the papers. It was an order. * * * I signed bills of all bureaus, but the president also signed lots of bills. Perhaps on some days of all bureaus, practically two men signed the bills, the president and the commissioner. He had authority, and I had authority under his designation. I was supposed to sign all bills that came in front of me provided all proper certificates. * * * I said I had no inspectors of my own and would not trust the other inspectors in the borough hall."

And the following from the testimony of William Herdman, secretary to Mr. Denton, the commissioner of public works:

"During July or August I had a conversation with John M. Phillips regarding one bill he had, he wanted to get signed, to go to Rockaway and have signed by the commissioner one bridge bill, some bridge up there. (Bill for $852 for repairing bridge at Central avenue, St. Albans. People's Ex. 4 shown witness. Witness says:) That isn't it. * * * I know the commissioner went in and made complaint to the borough president. I was in the office of the commissioner of public works at the time. He made the complaint in the president's office. He went in and said he would not sign any more bills. They had quite a wrangle there. There was five or six in there. I heard them talking. Q. Did you hear Mr. Denton say he would not sign any more bills? A. Yes, he advised him not to sign all the bills. Advised the borough president. He did not have reference to any particular bills. There was a whole lot of them there. I have taken lots of them and laid them on his

desk. When I overheard this I was sitting at my desk, near the door, about 15 feet or a little more from Denton and the borough president. I heard him say he would not sign any more and be careful what he signed. Did not hear Mr. Gresser's reply."

Some time thereafter, the claim in question was stamped with the certificate set forth in the indictment and the certificate signed by the defendant.

In a civil action the rule is that a material fact may be established by circumstantial evidence. Still, to do so, the circumstances must be such as to fairly and reasonably lead to the conclusion sought to be established and to fairly and reasonably exclude any other hypothesis. Where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed to it which accords with its absence. In other words, it can only be established by proof of such circumstances as are irreconcilable with any other theory than that the act was done. Insufficient evidence is no evidence. Lopez v. Campbell, 163 N. Y. 347, 57 N. E. 501. And again, when the evidence is capable of an interpretation which makes it equally as consistent with the innocence of a party as with his guilt, that meaning must be ascribed to it which accords with his innocence. It can only be so established by proof of such circumstances as are irreconcilable with any other theory than the guilt of the person accused. Shotwell v. Dixon, 163 N. Y. 52, 57 N. E. 178.

In a criminal action these rules are applicable not only, but more; the guilt of the defendant must be shown beyond a reasonable doubt, i. e., to a moral certainty.

The knowledge of the defendant must be thus shown to be knowledge that the claim when certified to was false and fraudulent. There must be clearly inferable a criminal intent to do the wrongful act alleged. Where the act itself has no necessary element of criminal character, the guilty intent becomes an independent fact and must be proved accordingly. These principles were enunciated and applied in the cases of People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383, 11 L. R. A. (N. S.) 528, and People v. Hegeman, 57 Misc. Rep. 295, 107 N. Y. Supp. 261.

Tested by these principles and rules of law, it is manifest that all the legal evidence before the grand jury taken together is such that, if unexplained and uncontradicted, would not warrant a conviction by a trial jury of the charge set forth in the indictment, and that their judgment to the contrary is erroneous, prejudicial to the defendant, and violative of his constitutional rights.

The defendant's motion to set aside the indictment is granted because it clearly appears that the legal evidence received by the grand jury is insufficient to support the indictment.

This conclusion will not preclude an application to the court for a resubmission of the charge to another grand jury, should other and legal evidence be found which shall justify such procedure.