that fact is controlling. The examination was at the same time the doctor was treating him for the same trouble. It seems unfair that he could call certain of his physicians and refuse to permit others to testify on the ground of professional privilege. We quote from Capron v. Douglass, 193 N. Y. 11, 17, 85 N. E. 827, 828 (20 L. R. A. [N. S.] 1003):

"To hold that the plaintiff may waive the privilege as to himself and his own physicians, and then invoke it as to the defendant and his physicians, would have the effect of converting the statute into both a sword and a shield. It would permit him to prosecute with the sword, and then shield himself from the defense by the exclusion of the defendant's testimony. It would enable the plaintiff to testify to whatever he pleased with reference to his condition and the treatment adopted by the defendant without fear of contradiction. The plaintiff could thus establish his cause of action, and the defendant would be deprived of the power to interpose his defense by reason of the closing of the mouth of his witnesses by the provisions of the Code referred to. Such a construction of its provisions we think was never contemplated by the Legislature. It would lead to unreasonable and unjust results. Instead thereof a construction of the provisions of the Code, to the effect that when the privilege of the plaintiff has been once waived by him in court, either by his own testimony or by that of others given with his knowledge and consent, and his physical condition has been given to the public, the door is then thrown open for his opponent to give the facts as he understands them. This, to our minds, affords a more just and equitable rule, and is the one that was evidently contemplated by the Legislature."

See, also, McKenney v. American Locomotive Co., 164 App. Div. 625, 149 N. Y. Supp. 826.

Upon the authority of the Capron Case we feel that the defendant was entitled to the evidence of Dr. Harvie as to the plaintiff's condition.

It is strenuously insisted that the damages are excessive. We need not pass upon that question, or the other questions raised upon the appeal. Clearly the actual physical condition of the plaintiff while he was at the Samaritan Hospital was very material, and the defendant had the right to have the testimony of Dr. Harvie upon that subject. I therefore favor a reversal.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event.

SMITH, P. J., and LYON and WOODWARD, JJ., concur. HOWARD, J., not voting.

---

KEYES et al. v. METROPOLITAN TRUST CO. OF CITY OF NEW YORK.
(No. 325–87.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. PRINCIPAL AND AGENT &#8257;103—POWERS OF ATTORNEY—CONSTRUCTION.
    Where a power of attorney authorized the attorney in fact to collect all debts due or to become due, and receive dividends on corporate stock, to collect and receive rents, to give valid receipts for all moneys received, to make, sign, execute, and deliver all bills of exchange, promissory notes, and other evidences of indebtedness, and to sell and transfer personal

property, the attorney was not authorized to execute promissory notes to purchase corporate stock for the maker of the power.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278–293, 353–359, 367; Dec. Dig. ☞103.]

2. PARTNERSHIP ☞247—SURVIVING PARTNER—DUTIES.

A surviving partner becomes the owner of the assets of the copartnership and personally liable for its indebtedness, being bound, in case the assets exceed the indebtedness, to account to personal representatives of the deceased partner, and, if not, with the contingent right to demand contribution from the estate of the deceased.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 524–528; Dec. Dig. ☞247.]

3. PARTNERSHIP ☞251—RATIFICATION OF INDEBTEDNESS—EFFECT.

Where a surviving partner, who acted as administrator of the estate of his copartner, listed firm obligations, including the note held by plaintiffs, which note the surviving partner had executed, in the lifetime of his deceased partner, by virtue of a power of attorney from him, such listing was not a ratification of the indebtedness.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 536–539; Dec. Dig. ☞251.]

Appeal from Trial Term, Otsego County.

Action by De Forest Keyes and another, as executors of Marquis L. Keyes, deceased, against the Metropolitan Trust Company of the City of New York, as administrator of the estate of Alexander McDonald, deceased. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Carter, Ledyard & Milburn, of New York City (Walter F. Taylor and Edwin D. Bechtel, both of New York City, of counsel), for appellant.

J. F. Thompson, of Oneonta, for respondents.

WOODWARD, J.   The complaint states a cause of action against the defendant, as administrator of the estate of Alexander McDonald, upon a promissory note alleged to have been made and delivered by the said Alexander McDonald in his lifetime. The answer denies on information and belief the making and delivery of the note, and the issue presented upon the trial was whether the note in question for $20,000 was authorized by the decedent; it being concededly made and delivered by Edmund K. Stallo, claiming to act as attorney in fact for the said Alexander McDonald, in the purchase of certain bank stocks at Oneonta, N. Y.

There is no question here that Mr. Stallo made and delivered the note in the name of Mr. McDonald, signing the same as attorney in fact; and the only question on this appeal is whether the evidence is sufficient to support the judgment in favor of the plaintiffs. The power of attorney issued to Mr. Stallo, in 1903, and in practically the same words in the month of October, 1907, is in evidence, and the question presented is whether this power of attorney, issued in 1907, is sufficient to justify Mr. Stallo in purchasing shares of the stock of the First National Bank of Oneonta, in the month of January, 1910, and in issuing the note in

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

suit in payment of such purchase. The only evidence bearing upon the relation of Alexander McDonald to this transaction, outside of the power of attorney and the note, is found in the testimony of Mr. Stallo, who testified as follows:

"Q. Of course Mr. McDonald knew about this transaction, or you would not have signed his name to the note? A. Mr. McDonald did not know of this particular transaction. Q. Had you ever talked with him about it at all? A. I had not. He was in California at the time I executed the note, and died before I saw him. Q. Had you in any way communicated with him in reference to the purchase by him through you of an interest in the First National Bank of Oneonta? A. I had mentioned it to him before that. Q. And what did he say when you mentioned it to him? A. That he was willing to take an interest."

Obviously this testimony does not throw any light upon the issue. It does not indicate when the alleged mention of the proposed purchase was made; it does not disclose that there was any understanding reached as to what interest, if any, was to be acquired; and it certainly does not indicate any intention on the part of Mr. McDonald to enter into the particular transaction underlying the giving of the note in suit. The most that may fairly be inferred from the meager testimony adduced is that at some time the matter of purchasing some stock of the First National Bank of Oneonta was mentioned, and that Mr. McDonald had at that time said that he was "willing to take an interest." But what the circumstances were under which he was willing to take an interest, and whether before or after the issuing of the power of attorney, nowhere appears; and the attempt to argue that Mr. McDonald construed the power of attorney as adapted to the situation which developed while he was in California is decidedly far-fetched, and entitled to little consideration. The record shows that the power of attorney last issued was made in the year 1907, on the 22d day of October, while the note in suit was not made until the 11th day of January, 1910. It was not, therefore, made with reference to this particular transaction, of which Mr. McDonald knew nothing, and as a mere casual conversation, such as is disclosed by the record, could not have added to the authority of Mr. Stallo in the premises, we are to look exclusively to the language and intent of the power of attorney under which the note was executed. If that does not authorize the transaction which was entered into between the plaintiff and others on the 11th day of January, 1910, the note had no valid inception, so far as Mr. McDonald was concerned, and his estate cannot be charged therewith. We are not concerned with the question of the competency of Mr. Stallo as a witness. We are going to assume that he could properly testify to the matters above quoted; but, with that testimony in the case, it can serve no useful purpose to the plaintiffs, if the power of attorney was lacking in authority over the particular transaction.

[1] What was the true intent and purpose of the power of attorney when it was made and delivered on the 22d day of October, 1907? That is a question of law to be determined by the court, and the testimony above quoted does not aid us in the slightest degree. It does not purport to tell us what were the surroundings of the parties when the power was executed, or whether there had been any change in the situ-

ation, and we must look to the language used, in the light of established rules of construction of such instruments, to determine the scope of the power. The note in question was given for the purchase of stock in the First National Bank of Oneonta, in connection with a scheme on the part of certain persons, among them one Herbert T. Jennings, to secure control of such bank; and the evidence indicates clearly that the plaintiff took the note with a full understanding of the transaction, for Mr. Jennings gives him a certificate to the effect that he has a certified copy of the power of attorney in his office under which Mr. Stallo assumed to act. He had no evidence of the contents of the power of attorney. He relied entirely upon what Mr. Stallo did and what Mr. Jennings assured him in reference to the same, so that the contention that the plaintiff construed the power of attorney as authorizing the transaction is without merit. He took the chances of the power being broad enough to cover this transaction, and if he has lost in the deal he has only his own negligence to blame for the result.

Coming down to the power of attorney, it provides:

"That I, Alexander McDonald, * * * have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Edmund K. Stallo, of the same place, my true and lawful attorney in fact, for me and in my name, place, and stead, to collect all debts due or to become due to me; to collect and receive all dividends on stock of incorporated companies owned or held by me; to collect and receive all rents due or accruing to me for real estate owned by me in said county and state, or in any part of the United States, and to give valid receipts and acquittances for all money received by him for me and in my behalf; to make, sign, execute, and deliver, for me and in my name, all bills of exchange, promissory notes, and other evidences of indebtedness; to sell, transfer, and assign all personal property of whatever description which I may own or to which I have any right or title; * * * to guarantee the payment of promissory notes, obligations, and debts of any company in which I may be or become a stockholder, especially of the Kingston Lumber Company, a corporation under the laws of New Hampshire, and the Mobile, Jackson & Kansas City Railroad Company; and generally in the sale and management of my personal property, and in other matters above mentioned, to do and perform everything which I could do and perform if personally present, giving and guaranteeing unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof."

Great stress is laid upon the fact that the power of attorney provides for the making, signing, execution, and delivery of promissory notes; but we are of opinion that the spirit of the clause is not the promissory notes, but "evidences of indebtedness." That is, Mr. Stallo is to "make, sign, execute, and deliver, for me and in my name, all bills of exchange, promissory notes, and other evidences of indebtedness." He is to have power to pay or adjust the existing indebtedness of Mr. McDonald, but we look in vain for any suggestion that he is to create any such indebtedness for the purpose of performing this function. Mr. Stallo is given power of attorney "for me and in my name, place, and stead, to collect all debts due or to become due to me; to collect and receive all dividends on stock of incorporated companies

owned or held by me; to collect and receive all rents due or accruing to me for real estate" anywhere in the United States; and, having thus deprived himself of all apparent sources of revenue, he provides not unnaturally that this same Mr. Stallo is to "make, sign, execute, and deliver for me and in my name all bills of exchange, promissory notes, and other evidences of indebtedness." That is, Mr. Stallo is to pay or provide for the present indebtedness of Mr. McDonald by making, signing, executing, and delivering "for me and in my name all bills of exchange, promissory notes, and other evidences of indebtedness," in conjunction with the previously given power of collecting in his name all of the revenues of the estate. This provision is followed by the further power, not to purchase, which is most significant, but "to sell, transfer, and assign all personal property of whatever description which I may own or to which I have any right or title; * * * and generally in the sale and management of my personal property, and in other matters above mentioned, to do and perform everything," etc.

It is in the "sale and management of my personal property," excluding real estate, that Mr. Stallo is to have these powers, and the management referred to is clearly the collection of the debts due and to become due, the collection of dividends upon stocks, the collection of the rents of the real estate wherever found, and the making, signing, executing, and delivering "for me and in my name all bills of exchange, promissory notes, and other evidences of indebtedness," as well as in the guaranteeing of the "payment of promissory notes, obligations, and debts of any company in which I may be or become a stockholder." There is no general power to manage given, in the sense of conducting an active business; it all relates to the collection of income and the distribution of the same, or in continuing existing evidences of indebtedness. The management is limited to the enumerated matters; there is no general power of attorney, as the real estate is especially excluded from consideration, except in the matter of collecting rents, which excludes, no doubt, the making of repairs, or the leasing of the same, without the approval of Mr. McDonald. These considerations, taken in connection with the special power given to "sell, transfer, and assign all personal property," must, by necessary implication, deny the right to purchase other property, under the well-known maxim of "Expressio unius est exclusio alterius." And while this maxim will not be permitted to defeat the obvious intent, where it conflicts with the latter, such intent must, nevertheless, be discernible in the context of the instrument itself. Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57, 57 N. E. 168, 79 Am. St. Rep. 565. There is no clearly expressed intention of giving power to Mr. Stallo to purchase any property whatever; he may sell, but the authority to purchase is not given; and, as the note in question was not made, executed, and delivered in pursuance of any power expressly delegated to him, it was not authorized by the power of attorney in evidence, and the same is not a valid obligation against the estate. See Lesem v. Mutual Life Ins. Co., 164 App. Div. 507, 149 N. Y. Supp. 559.

[2, 3] But it is claimed that Mr. Stallo, while acting as administrator of the estate of Mr. McDonald, recognized this note as a subsisting obligation of the estate, and that it has thus become a charge against the estate. But the action is brought to recover upon the note given by Mr. Stallo, assuming to act as the attorney in fact of Mr. McDonald, and the question is not one of ratification, but of authority to incur the obligation. The pleadings state a cause of action upon the note, and the defense is that the note had no valid inception, and these are the issues in this case. There is, however, no merit in the contention that Mr. Stallo, as administrator, has recognized this note as a valid obligation of the estate. He made what he terms a "list of the assets of the estate of said McDonald" which had come into his hands as administrator, and "a complete list of the liabilities of said estate, direct and contingent," and by way of explanation he says:

"Mr. McDonald and the undersigned [Edmund K. Stallo] were for many years, just prior to the death of Mr. McDonald, partners in various transactions, especially in the construction of what is known as the New Orleans, Mobile & Chicago Railroad. No settlement of the partnership affairs had been made at the time of Mr. McDonald's death. This fact has made it necessary to prepare separate schedules of both assets and liabilities; one set showing the individual assets and liabilities of Mr. McDonald, and the other showing the assets and liabilities of McDonald & Stallo."

He then includes the stock of the First National Bank of Oneonta in the assets of the firm of McDonald & Stallo, and charges that firm with the amount of the note involved in this litigation. This obviously is not an individual liability of Mr. McDonald's estate until the assets of the partnership have been exhausted. Mr. Stallo, as surviving partner, becomes the owner of the assets of the copartnership, and personally liable for the indebtedness of such copartnership. Pope v. Cole, 55 N. Y. 124, 14 Am. Rep. 198; Potts v. Dounce, 173 N. Y. 335, 66 N. E. 4; Williams v. Whedon, 109 N. Y. 333, 338, 16 N. E. 365, 4 Am. St. Rep. 460. He may have an action for contribution against the estate of Mr. McDonald, after he has discharged the duties of a surviving partner (authorities above cited); but if the note in question was given for a copartnership obligation it did not come within the powers conferred by the instrument delivered to Mr. Stallo in 1907, and it can in no wise aid the plaintiff in this action because Mr. Stallo erred in supposing that it was his duty to inventory the alleged assets and liabilities of the copartnership in connection with the estate of Mr. McDonald. That estate has no relation to the copartnership assets and liabilities; in law they are all vested in and become the obligations of Mr. Stallo as the surviving partner, subject to the duty of Mr. Stallo to account to the personal representatives of Mr. McDonald for any excess of assets over liabilities, and to a contingent liability on the part of the estate to contribute if there are insufficient assets of the copartnership to meet its obligations. Williams v. Whedon, 109 N. Y. 333, 16 N. E. 365, 4 Am. St. Rep. 460; Potts v. Dounce, 173 N. Y. 335, 66 N. E. 4; Pope v. Cole, 55 N. Y. 124, 14 Am. Rep. 198. It must be entirely obvious, therefore, that the inclusion of these assets and liabilities in an inventory of the

estate of Mr. McDonald was error on the part of Mr. Stallo, and that it can give no possible character to the note made in January, 1910.

The judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except SMITH, P. J., not voting.